```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LIFE SERVICES SUPPLEMENTS, INC., and      :    03 Civ. 6030 (SHS)
KETO, LLC,                                :
                                          :
                     Plaintiffs,          :
                                          :    OPINION AND ORDER
          -against-                       :
                                          :
NATURAL ORGANICS, INC.,                   :
                                          :
                     Defendant.           :
------------------------------------------------------------------x
```

SIDNEY H. STEIN, U.S. District Judge.

Plaintiffs Life Services Supplements, Inc., and Keto, LLC (collectively, "Life Services"), having prevailed at trial on the issue of liability in this action against Natural Organics for the unauthorized use of the "Keto" trademark, now move pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure to amend this Court's August 30, 2006 judgment in order for Life Services to recover Natural Organics' profits from the sale of infringing products. While the Lanham Act, 15 U.S.C. § 1117(a), permits prevailing plaintiffs to recover an infringer's illicit profits, such profits are available in the Second Circuit only when the trademark violation is found to be willful. Because the jury in this action determined that Natural Organics did not commit any willful deception in connection with its use of the "Keto" mark, Life Services cannot recover defendant's profits, and therefore plaintiffs' motion is denied.

I.    BACKGROUND

Life Services commenced this action against Natural Organics for trademark infringement arising from the unauthorized use of the mark "Keto" on various Natural Organics products. At the conclusion of a seven-day trial, the jury ruled in favor of Life

1

Services.  The jury's verdict included the specific findings that (1) "Keto" was descriptive, (2) "Keto" had obtained secondary meaning in the market, (3) Natural Organics' use of "Keto" was likely to cause confusion, and (4) Natural Organics did not use "Keto" "intentionally, knowing it was an infringement and acting with willful deception."  (Jury Verdict dated Nov. 3, 2004.)  The jury rejected both of Natural Organics' counterclaims.  (Id.)

On the basis of that verdict, this Court entered a declaratory judgment in favor of Life Services, finding that Life Services had a valid trademark for "Keto" and that Natural Organics had engaged in (1) unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a), (2) trademark infringement under New York and New Jersey common law, and (3) unfair competition under New Jersey law.  (Declaratory Judgment dated Aug. 30, 2006 ¶¶ 1, 4.)  This Court also ordered the Director of Patents and Trademarks to cancel Natural Organics' trademark "Ketoslim" and enjoined Natural Organics from engaging in further infringement of Life Services' "Keto" mark.  (Id. ¶¶ 5-6.)  On the issue of damages, the judgment provided as follows: "Because the jury found that Natural Organics did not use the "Keto" mark intentionally, knowing it was an infringement and acting with willful deception, Life Services is not entitled to recovery of Natural Organics' profits or to an accounting of those profits."  (Id. ¶ 10.)

Life Services subsequently moved to amend the August 30, 2006 judgment to permit the recovery of Natural Organics' profits.  Shortly thereafter, Natural Organics filed a notice of appeal from the judgment to the U.S. Court of Appeals for the Second Circuit.  That appeal has been stayed pending determination of Life Services' motion.

## II. PROCEDURAL POSTURE

As a general rule, the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 103 S. Ct. 400, 74 L. Ed. 2d 225 (1992). Pursuant to Fed. R. App. P. 4(a)(4)(B)(i), however, "[i]f a party files a notice of appeal after the court announces or enters a judgment – but before it disposes of any motion listed in Rule 4(a)(4)(A) – the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered." See Hertzner v. Henderson, 292 F.3d 302, 303 (2d Cir. 2002). The motions listed in Rule 4(a)(4)(A) include, inter alia, motions "to alter or amend the judgment under Rule 59" and "for relief under Rule 60." Rule 4(a)(4)(A) encompasses, therefore, Life Services' motion to amend the judgment pursuant to Fed. R. Civ. P. 59 and 60, which was filed before Natural Organics' notice of appeal. Accordingly, the notice of appeal is not effective at this time and will not divest this Court of jurisdiction until Life Services' motion to amend the judgment is resolved.

## III. DISCUSSION

Life Services' motion raises the question of whether a plaintiff who prevails on a false designation of origin claim under the Lanham Act, 15 U.S.C. § 1125(a), may then recover profits pursuant to 15 U.S.C. § 1117(a) from a defendant who did not engage in "willful deception." While courts in this district have expressed conflicting views on this issue, this Court finds that absent authority to the contrary from the U.S. Court of Appeals for the Second Circuit, profits cannot be awarded in false designation of origin suits unless willful deception is established. Because the jury in this action specifically

found that Natural Organics did not use the "Keto" mark "intentionally, knowing it was an infringement and acting with willful deception," plaintiffs' motion to reconsider the judgment is denied.

> A. <u>Life Services Contends that the 1999 Amendments to the Lanham Act Eliminated the Willfulness Requirement.</u>

In its motion to amend this Court's August 30, 2006 judgment, Life Services contends that profits can be awarded for a section 1125(a) violation irrespective of whether the violation was willful because the willfulness requirement was eliminated by amendments to the Lanham Act enacted in 1999. Prior to 1999, the Lanham Act, in relevant part, read:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, or a violation under section 1125(a) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. § 1117(a) (1998). Following the statute's mandate to take equitable considerations into account when awarding monetary remedies, the Second Circuit held that "a plaintiff must prove that an infringer acted with willful deception before the infringer's profits are recoverable by way of an accounting." <u>George Basch Co. v. Blue Coral, Inc.</u>, 968 F.2d 1532, 1540 (2d Cir. 1992).

In 1999, section 1117(a) was amended to read as follows:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, or a violation under section 1125(a) of this title, <u>or a willful violation under section 1125(c) of this title</u> [i.e., trademark dilution], shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to

4

> the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. § 1117(a) (1999) (emphasis added). Life Services contends that this amendment limited the willfulness requirement to section 1125(c) claims only. Under its reading of the amended statute, plaintiffs seeking monetary remedies for a violation of section 1125(c) – trademark dilution – must show that the violation was willful. Plaintiffs seeking monetary remedies, as here, for violations of section 1125(a) – false designation of origin – however, need not prove willfulness in order to recover any of the remedies authorized by section 1117(a), including defendants' profits, under Life Services' construction of the statute.

Life Services' position finds support in decisions from the Third and Fifth Circuits and in two opinions issued by courts in this district.

In Banjo Buddies, Inc. v. Renosky, 399 F.3d 168 (3d Cir. 2005), the Third Circuit concluded that the 1999 amendments to the Lanham Act superseded circuit precedent requiring willfulness for the award of profits in section 1125(a) actions. The court reasoned that "Congress was aware that most courts had consistently required a showing of willfulness prior to disgorgement of an infringer's profits in Lanham Act cases, despite the absence of the word 'willful' in the statutory text prior to 1999." Id. at 174. Therefore, the decision to introduce a willfulness requirement for one class of Lanham Act violations, but not another, constituted a clear refinement of that court-made rule by Congress. The court explained:

> The 1999 amendment replaced 'or a violation under section 43(a) [15 U.S.C. § 1125(a)]' with 'a violation under section 43(a), or a willful violation under section 43(c) [15 U.S.C. § 1125(c)].' The plain language of the amendment indicates that Congress intended to condition monetary

awards for § 43(c) violations, but not § 43(a) violations, on a showing of willfulness.

Id. Accordingly, the court abandoned its willfulness requirement and adopted a "factor-based approach" developed by the Fifth Circuit to determine whether profits are warranted in Lanham Act cases. Id. at 175.

In Quick Techs. v. Sage Group Plc, 313 F.3d 338 (5th Cir. 2002), the Fifth Circuit considered whether a district court erred by instructing a jury that it could award profits under section 1117(a) only if it found willful infringement. The court concluded that the instruction was not required by the "plain language" of the statute and could be improper in light of the circuit's precedents. Id. at 349-50. Explaining that "willful infringement is an important factor which must be considered when determining whether an accounting of profits is appropriate," the court nevertheless "decline[d] to adopt a bright-line rule in which a showing of willful infringement is a prerequisite to an accounting of profits." Id. at 349. Instead, the court reaffirmed its "factor-based approach" for determining when profits are warranted in Lanham Act cases – an approach that was first set forth in Pebble Beach Co. v. Tour 18 I Ltd., 155 F.3d 526 (5th Cir. 1998). Because none of the Pebble Beach factors warranted an award of profits, the Fifth Circuit affirmed the district court's ruling in Quick Techs. Id. at 350.

Relying on Banjo Buddies and Quick Techs., then Judge, now Chief Judge, Kimba M. Wood of this district concluded in Nike, Inc. v. Top Brand Co., No. 00 Civ. 8179, 2005 U.S. Dist. LEXIS 42374 (S.D.N.Y. July 13, 2005), that the 1999 amendments to the Lanham Act superseded the Second Circuit's willfulness requirement for the recovery of profits in section 1125(a) actions. Judge Wood adopted the multi-factor test applied by the Third and Fifth Circuits and held that "although willfulness is not a

6

prerequisite to the recovery of profits for infringement and counterfeiting, it continues to function as an equitable consideration under the Fifth Circuit's multi-factor test." Id. at *35-36; see also Cartier v. Aaron Faber, Inc., 512 F. Supp. 2d 165 (S.D.N.Y. 2007); Jerome Gilson, Trademark Protection and Practice § 14.03 (2007).

  B. The Second Circuit's Willfulness Requirement Survived the 1999 Amendments.

While this Court is mindful of the case law that supports plaintiffs' position, it nonetheless believes that the 1999 amendments did not, in fact, eviscerate the Second Circuit's willfulness requirement for an award of profits in false designation of origin suits. Specifically, the plain text of the statute, the structural impact of the 1999 amendments on the Lanham Act, the language of the law authorizing the 1999 amendments, other case law, and the relevant legislative history strongly suggest that these amendments dealt exclusively with the standard for recovery in trademark dilution cases and not remedies for other Lanham Act violations, such as the false designation of origin claim at issue here. Moreover, absent an express, or at least clear, indication that Congress intended to abrogate the Second Circuit's willfulness requirement through the 1999 amendments, that requirement remains binding precedent on this Court.

First, district judges in this district have concluded that the Second Circuit's willfulness requirement has not been superseded by the 1999 amendments on the ground that those amendments modified standards for recovery in trademark dilution actions only. In MasterCard Int'l, Inc. v. First Nat'l Bank of Omaha, Inc., No. 02 Civ. 3691, 03 Civ. 707, 2004 U.S. Dist. LEXIS 2485 (S.D.N.Y. Feb. 23, 2004), for example, Judge Denise L. Cote concluded that the 1999 amendments did not alter the Second Circuit's willfulness requirement for the recovery of profits in trademark infringement suits. Like

7

Judge Wood, Judge Cote considered it "appropriate to assume that Congress is aware of existing law when it passes or amends legislation," id. at *33, and construed Congress's insertion of a willfulness requirement for section 1125(c) violations – but not for section 1125(a) – as a ratification of prior circuit precedent on willfulness, rather than an abrogation: "It may be presumed that Congress's inclusion, without alteration, of the language concerning Section 1125(a) incorporates the existing judicial interpretation of that language." Id. at *36.

Judge Cote determined that the 1999 amendments simply restricted the availability of any recovery – whether damages, profits or costs – in section 1125(c) trademark dilution actions only to cases where the statutory violation was willful, but had no effect whatsoever on the available remedies for section 1125(a) claims. Noting that "the Second Circuit permits the recovery of damages" – but not profits – "when a plaintiff is able to prove actual confusion but not intentional deception" in section 1125(a) actions, Judge Cote explained that "the inclusion of the 'willful' modifier before 'section 1125(c)' in the 1999 Amendment provides a more stringent standard for recovery than is available for a violation under Section 1125(a)." Id. at *36. Thus, the 1999 amendments addressed only the question of when a plaintiff can obtain a recovery in section 1125(c) actions – i.e., only on a showing of willfulness – and had no impact on the preexisting standards governing the recovery of profits or damages in section 1125(a) actions.

A similar conclusion was reached in Louis Vuitton Malletier v. Dooney & Bourke, Inc., 500 F. Supp. 2d 276 (S.D.N.Y. 2007), where Judge Shira A. Scheindlin emphasized that "the 1999 Amendment did not alter or even address the language of

8

section 1125(a) concerning infringement [as opposed to the language of section 1125(c) concerning dilution], or the language of section 1117(a) concerning monetary remedies for infringement [as opposed to remedies for dilution]." Id. at 281. Instead, the 1999 amendments to section 1117(a) brought the language of that section – dealing with Lanham Act remedies – in line with section 1125(c), which already "required the owner of a famous mark to prove a defendant's willfulness in order to recover monetary relief on a dilution claim." Id. at 282. Accordingly, Judge Scheindlin concluded that "the addition of 'willful violation under section 1125(c),' does not indicate that it was Congress's intention to simultaneously sub silentio overturn the weight of authority with respect to section 1125(a)." Id. at 281.

The Court finds this line of reasoning persuasive. By their literal terms, the 1999 amendments modified the standard of recovery in Lanham Act actions only with respect to trademark dilution claims. See 15 U.S.C. § 1117(a). The amendments did not directly alter any other aspect of the remedies provision of the Lanham Act.

On its face, then, the amended statute restricts monetary awards in dilution cases to willful violations, but leaves the appropriate remedy for other Lanham Act violations "subject to the principles of equity," 15 U.S.C. § 1117(a), just as it was prior to the 1999 amendments. On this point, Judge Scheindlin's observation that the amendments simply reconciled the remedies section of the Lanham Act with the substantive provision outlawing trademark dilution, 15 U.S.C. § 1125(c), is particularly compelling. See 15 U.S.C. § 1125(c) (requiring court to find that defendant "willfully intended to trade on the recognition of the famous mark; or . . . willfully intended to harm the reputation of the famous mark" in order for plaintiff to obtain monetary relief). Accordingly, the Court

declines to read into the amendment a broader purpose beyond clarifying the standard for recovery in trademark dilution cases.

In addition, the legislative history of the 1999 amendments further supports the view that these amendments addressed trademark dilution only and were not intended to impact other Lanham Act violations. At the most rudimentary level, the section of the bill containing the relevant amendment is entitled "Remedies in Cases of <u>Dilution</u> of Famous Trademarks," Trademark Amendments Act of 1999, Pub. L. No. 106-43, 113 Stat. 218 (emphasis added), which makes it patent that the focus of the legislation was trademark dilution, not infringement.

Moreover, the Congressional Record indicates that Congressman Elijah E. Cummings – one of the two representatives to speak during the debate on this legislation – declaimed:

> This legislation is a necessary follow-up to the Federal Trademark Dilution Act of 1995, which was enacted last Congress and which gave a Federal cause of action to holders of famous trademarks for dilution. <u>The bill before us today is necessary to clear up certain issues in the interpretation of the dilution act which the Federal courts have grappled with since its enactment</u>.

145 Cong. Rec. H6363 (emphasis added). The Court has found no legislative history suggesting that Congress intended to modify the standards for an award of profits for trademark infringement or false designation of origin through the 1999 amendments.[1]

---

[1] <u>McCarthy on Trademarks and Unfair Competition</u> concludes that the 1999 amendments did not modify the standards for awarding profits pursuant to the Lanham Act for non-dilution claims. Examining the Third and Fifth Circuits' analysis of the 1999 amendments, the treatise writer found their "reading of Congressional intent . . . inaccurate":

> In fact, the 1999 amendment of Lanham Act § 35(a) was not intended to change the law by removing willfulness as a requirement for an award of profits in a classic infringement case, but rather was meant to correct a drafting error when Congress intended to limit the recovery of damages in dilution cases (and only dilution cases) to instances of a "willful violation." The courts have leveraged

In addition, the Fifth Circuit's ruling in Quick Techs. provides scant guidance to this Court on whether the 1999 amendments abrogated the Second Circuit's willfulness requirement for an award of profits because the Fifth Circuit never adopted a willfulness standard in the first instance. In fact, the Fifth Circuit had adopted its multi-factor test, which included willfulness as one factor among many, prior to the enactment of the 1999 amendments. See Pebble Beach Co. v. Tour 18 I Ltd., 155 F.3d 526 (5th Cir. 1998). Whereas the Second Circuit gave effect to the directive in section 1117(a) that "the principles of equity" govern Lanham Act remedies by imposing a bright-line rule – i.e., willfulness – for an award of profits, the Fifth Circuit construed section 1117(a) to mandate a multi-factor standard. Thus, the Second and Fifth Circuits construed section 1117(a) differently prior to the enactment of the 1999 amendments. When the Quick Techs. court considered the impact of the 1999 amendments, therefore, it was not required to determine whether the willfulness provision superseded its precedents because the Fifth Circuit had already rejected a bright-line rule centered on willfulness. Accordingly, Quick Techs. provides little guidance to this Court.

Finally, jurisprudential considerations counsel in favor of this Court recognizing the continued validity of the willfulness standard. The law of this circuit is that profits cannot be awarded under the Lanham Act absent a showing of willfulness. See George Basch, 968 F.2d at 1540. While it is true that the Second Circuit has not revisited that question since the enactment of the 1999 amendments, the 1999 amendments do not directly contradict that precedent; at the very most, they do so only by implication.

---

        this statutory change beyond its intended scope to adjust the equities in ordinary
        infringement cases in order to make it easier for a trademark owner to recover
        profits.

5 Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:62 (4th ed. 2007).

Therefore, to the extent that the impact of the 1999 amendments is ambiguous, this Court should follow Second Circuit precedent, and it does so here.

## IV. CONCLUSION

For the reasons set forth above, a plaintiff must prove willfulness in order to recover profits in false designation of origin actions brought in the Second Circuit pursuant to the Lanham Act. Because Natural Organics' use of Life Services' mark was specifically found by a jury to lack willfulness, Life Services cannot recover Natural Organics' profits. Accordingly, Life Services' motion for reconsideration of this Court's August 30, 2006 judgment is denied.

Dated: New York, New York
December 17, 2007

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.